UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-02725-CAS-DTBx | Date | October 19, 2026 |
| Title | OEGG, Inc. et al v. Pierce Egg Co. et al | | |

| | | |
|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | |
| Catherine Jeang | Amy Diaz | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Edward Loya, Jr.<br>Benjamin Yaghoubian | Alex Weingarten<br>Amy Stern |

**Proceedings:** DEFENDANTS' MOTION TO DISMISS CAUSES OF ACTION AND STRIKE ALLEGATIONS FROM PLAINTIFFS' FIRST AMENDED COMPLAINT (Dkt. 112, filed on September 14, 2026)

## I. INTRODUCTION

The procedural history of this case is known to the parties and set forth in the Court's June 24, 2026, July 8, 2026, and October 5, 2026 orders. Dkts. 50, 63, 122.

On August 31, 2026, plaintiffs Oegg, Inc., Oegg Texas Foods, Inc., and Hunan Huxianggong Food Co., Ltd. (collectively, "plaintiffs" or "Oegg") filed their First Amended Complaint ("FAC"). Dkts. 98 ("FAC"); 99 ("Sealed FAC"). In the FAC, plaintiff alleges nine claims for relief: (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*; (2) misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426, *et seq.*; (3) breach of fiduciary duty and duty of loyalty, Cal. Corp. Code § 16404; (4) aiding and abetting breach of fiduciary duties and duty of loyalty, Cal. Corp. Code § 16404; (5) violation of unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 and 17203, *et seq.*; (6) fraud – intentional misrepresentation; (7) fraud – false promise; (8) breach of duty to negotiate in good faith; and (9) promissory estoppel. See FAC.

On September 14, 2026, defendants Pierce Egg Company d/b/a Chino Valley Ranchers ("CVR"), Christopher Nichols, Mario Montenegro, David Will, George Hand Produce Inc. ("GHP"), and George Chen (collectively, "defendants") filed the instant

motion to dismiss. Dkt. 112 (“Mot.”). On September 28, 2026, plaintiffs filed an opposition. Dkt. 116 (“Opp.”). On October 5, 2026, defendants filed their reply. Dkt. 121 (“Reply”).

On October 19, 2026, the Court held a hearing. Having carefully considered the parties’ arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiffs allege that Oegg is “a pioneer in the food industry, bringing its innovative ready-to-eat soft-boiled eggs and other egg products to consumers around the world.” FAC ¶ 22. Oegg was founded by Wu Xiang, who has “over 15 years of experience in the egg industry.” Id. ¶ 23. Plaintiffs allege that Oegg’s success is substantially attributable to its “consumer research, product-positioning experience, innovation in shelf-life and packaging, and market-education experience,” including its “production process, equipment integration, packaging, yield control, and commercialization.” Id. Plaintiffs further allege that Oegg has “expended significant resources, time, and effort to develop its products” and that its “proprietary processes, know-how, and industry knowledge constitute its confidential information and valuable trade secrets.” Id. ¶ 24.

Plaintiffs allege that their confidential information and trade secrets include the materials identified in FAC ¶ 25. Plaintiffs further note that, in its June 24, 2026 order, the Court found the descriptions of the trade secret materials in subparagraphs (a), (b), (c), (d), (e), (g), (h), and (i) to be “sufficiently particular.” Id. ¶ 26 (citing dkt. 50 at 15-20). Plaintiffs allege that they are “the rightful owner of the confidential information and trade secrets at issue in this case,” which “derive independent economic value from not being generally known or readily ascertainable to the public through proper means.” Id. ¶ 27. Plaintiffs further allege that they have taken “reasonable measures to keep [their] confidential and trade secret information secure,” including restricting access to workshops, accompanying approved visitors with escorts, and limiting third-party vendors’ access to proprietary information. Id. ¶ 28. Plaintiffs also allege that they used “appropriate labeling on [their] documents to identify them as confidential,” including labels such as “CONFIDENTIAL” and “TRADE SECRET.” Id. ¶ 29.

Plaintiffs allege that, unbeknownst to them, defendants had been attempting to enter the ready-to-eat soft-boiled egg market since 2017. Id. ¶ 33. In 2019, defendants

set out to develop their own soft-boiled egg product and allegedly "entered into a profit-sharing agreement whereby George Hand would source the necessary equipment, while CVR would house the equipment and produce the product." Id. ¶ 35. Plaintiffs allege that, even by January 2024 (which is when defendants met Xiang), defendants "had not been able to produce such a product despite years of efforts." Id. ¶ 36. On January 22, 2024, Xiang met Montenegro and Will at the Winter Fancy Food Show in Las Vegas, where they discussed CVR's ability to supply eggs for plaintiffs' proposed U.S. manufacturing operation. Id. ¶¶ 37-39. Xiang was subsequently introduced to Chen, who requested product samples and catalog materials on behalf of CVR. Id. ¶¶ 39, 42-43. During a January 28, 2024 meeting, Chen allegedly acknowledged that there were no existing U.S. facilities geared toward producing the soft-boiled egg products that Oegg had developed and stated that he could assist plaintiffs with selecting a site for their U.S. facility. Id. ¶ 44.

On or around May 4, 2024, Nichols, Montenegro, Chen, and another representative visited plaintiffs' factory in Changsha, China. Id. ¶¶ 47-48. Plaintiffs allege that, during the visit, defendants "participated in a closed-door meeting with Oegg and received a tour of Oegg's facilities," where they "observed Oegg's trade secret processes from cooking to packaging." Id. ¶ 48. Xiang emphasized that the workshop was "fully confidential and normally closed to outsiders" and explained the confidentiality restrictions applicable to the visit. Id. ¶¶ 48-49. Plaintiffs allege that "[e]ach visitor verbally agreed to the confidentiality terms before receiving access to Oegg's confidential spaces and materials." Id. ¶ 49. Xiang allegedly provided information concerning plaintiffs' manufacturing process, including the "overall process flow," "sequencing and relationship of stages of production," and "process-control considerations." Id. ¶ 51. He also shared information concerning equipment configuration and integration, as well as "brining, marinating, and flavor stability techniques" and "sterilization and food safety techniques." Id. ¶ 52. Plaintiffs allege that defendants knew of their own prior unsuccessful product-development efforts but "purposely concealed this information from Plaintiffs" while obtaining access to plaintiffs' confidential information. Id. ¶ 54.

Plaintiffs further allege that the parties discussed a potential joint business venture. On May 6, 2024, Nichols allegedly conveyed that defendants "shared a vision for a joint business venture in the United States and looked forward to supporting Oegg's growth in that market." Id. ¶ 56. Later that month, plaintiffs proposed "a joint line between Oegg and CVR where Oegg would be a major shareholder of the business." Id. ¶ 57. Chen

expressed interest in "discussing potential structures for the business" and indicated that "many things were possible." Id. In June 2024, the parties exchanged emails concerning "potential sites for a factory as well as planning for the soft-boiled egg line." Id. ¶ 59. Plaintiffs allege that the parties also "expressly agreed at this time to continue to negotiate these contract terms toward a more detailed agreement." Id. On June 23-25, 2024, Chen and Montenegro attended the Summer Fancy Food Show in New York, where they "wore clothing identifying them as affiliated with Oegg and worked out of Oegg's booth." Id. ¶¶ 60-61. Plaintiffs allege that Chen and Montenegro presented plaintiffs' products to potential customers and investors and that the parties "strategized on how best to market Oegg's business model and products." Id. ¶¶ 62-65.

On or around July 3, 2024, the parties met in Los Angeles and discussed "ways to formalize their relationship in written agreements, agreeing to negotiate those terms in good faith." Id. ¶ 67. Plaintiffs allege that, during that meeting, the parties "negotiated contributions, equity, valuation and phased investment" and agreed that "further valuation information and assessments would be required." Id. ¶ 68. They also agreed to discuss these matters in August. Id. Xiang allegedly shared additional confidential information concerning plaintiffs' equipment line, egg-peeling process, machine fabrication, tuning logic, and production data. Id. ¶ 70. However, plaintiffs allege that "[i]n the months that followed this meeting, Defendants halted progress on the parties' joint efforts," and the contemplated August follow-up meeting did not occur. Id. ¶ 73. Plaintiffs allege that defendants "stalled and did not continue advancing the collaboration." Id. In November 2025, plaintiffs acquired a "100,000 square-foot facility in Corsicana, Texas," as part of a "tens-of-millions of dollars investment" in their U.S. manufacturing project. Id. ¶ 74. Plaintiffs allege that, after the parties' discussions ended, defendants used plaintiffs' confidential information and trade secrets to develop and launch a competing soft-boiled egg product. Id. ¶¶ 77-84. Specifically, at Natural Products Expo West, held March 3-6, 2026, CVR allegedly "introduced a competing product that was developed using the confidential and trade secret information that it learned from Oegg." Id. ¶¶ 80-81.

Plaintiffs allege that CVR had not previously informed Xiang that it was developing a competing product. Id. ¶ 81. At Expo West, Nichols allegedly described CVR's product and stated, "We're trying to bring that to America. We're the first - first ones to do it here domestic." Id. ¶ 83. Nichols also allegedly acknowledged defendants' trip to China, stating, "We went to Changsha." Id. Plaintiffs allege that defendants' use

of their confidential information gave defendants a "head start" and allowed them to "bypass the years of research, development, and innovation Oegg undertook." Id. ¶ 84. Plaintiffs further allege that defendants promoted the "Jammy Egg" product at public events and on social media and were preparing to bring the product to market on a larger scale in 2026. Id. ¶¶ 89-91.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

“A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as motion to dismiss a plaintiff's complaint.” PageMelding, Inc. v. ESPN, Inc., No. 11-cv-06263, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when “the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.” Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

### B. Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading an insufficient defense or redundant, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). “The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.” Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994)). However, motions to strike “are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic.” Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citations omitted). They “are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation.” Gaines v. AT&T Mobility Servs., LLC, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019). In addition, many courts require a moving party to demonstrate adequate prejudice before exercising their discretion to grant a motion to strike, even if the “offending matter literally was within one or more of the categories set forth in Rule 12(f).” N.Y.C. Emps. Ret. Sys. v. Berry, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (citation modified).

## IV. DISCUSSION

Defendants move to dismiss the following claims: breach of fiduciary duty and duty of loyalty, Cal. Corp. Code § 16404; aiding and abetting breach of fiduciary duties and duty of loyalty, Cal. Corp. Code § 16404; violation of unfair competition law (“UCL”), Cal. Bus. & Prof. Code §§ 17200 and 17203, *et seq.*; fraud – intentional

misrepresentation; fraud – false promise; breach of duty to negotiate in good faith; and promissory estoppel. See generally Mot. Defendants also move to dismiss claims against defendant David Will and to strike plaintiffs' withdrawn trade secret categories identified in FAC ¶¶ 25(f) and (j).

### A. Breach of Fiduciary Duty

"The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086 (1995). Defendants argue that plaintiffs have not pled facts sufficient to satisfy the first two elements. Mot. at 7. For reasons set forth below, the Court concludes that plaintiffs have failed to plausibly allege the existence of a partnership, and therefore, have failed to state a claim for breach of fiduciary duty.

Defendants argue that plaintiffs' allegation that the parties might have "shared a vision for a joint business venture" or even proposed that there be one does not mean a joint business venture actually came to fruition, especially where there is an absence of allegation that such a proposal was ever accepted. Id. Defendants further argue that the mere allegation that defendants wore plaintiffs' branded apparel and helped out at plaintiffs' booth at a tradeshow does not adequately allege a partnership between the parties, given that the allegation relates to *plaintiffs'* ongoing business, not the parties' joint business. Id.

Plaintiffs counter that they allege facts more than sufficient to establish the existence of an oral or implied partnership. Opp. at 2. Plaintiffs point to their allegation that, by May 4, 2024 (i.e., the Changsha factory visit), "an oral and/or implied partnership existed, and was further solidified and clarified, as the parties progressed from merely prospective ideas to actually agreeing, expressly and impliedly, that they were working together to carry on as co-owners of a business." Id. at 2-3 (citing FAC ¶ 118). Plaintiffs also point to the following allegations in their FAC: (1) defendants "shared a vision for a joint business venture in the United States and looked forward to supporting Oegg's growth in that market"; (2) Chen expressed interest in Oegg's proposal "for a joint line between Oegg and CVR where Oegg would be a major shareholder of the business"; (3) the parties exchanged emails "regarding potential sites for a factory as well as planning for the soft-boiled egg line"; and (4) the parties "agreed and understood that they had a joint interest in undertaking the selection of a site for a facility to produce a boiled-egg

product for the U.S. market." Id. (citing FAC ¶¶ 56, 57, 59, 69). Plaintiffs also argue that the parties acted as partners by attending trade shows together where: defendants wore Oegg-branded apparel, worked out of Oegg's booth, presented Oegg's products to potential customers and investors, and had discussions with Oegg about how best to market Oegg's business model and products, including to investors. Id. (citing FAC ¶¶ 60-65).

In reply, defendants emphasize that once plaintiffs' conclusory allegations are set aside, the FAC "pleads at most a contemplated joint venture that never came to be." Reply at 3-4. Defendants argue that "talking about or even planning for a joint business is not the same thing as actually forming a joint business." Id.

Under California law, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202(a). An agreement to form a partnership can be "written, oral, or implied." Cal. Corp. Code § 16101(10). To establish a joint venture under California law, plaintiffs must show "an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control." Connor v. Great W. Sav. & Loan Ass'n, 69 Cal. 2d 850 (Cal. 1968). "From a legal standpoint, both relationships [i.e., partnerships and joint ventures] are virtually the same." Weiner v. Fleischman, 54 Cal. 3d 476, 479 (1991). "The presence or absence of any of the various elements [such as] . . . sharing of profits and losses, is not necessarily dispositive . . . . [T]he crucial factor [is] the intent of the parties revealed in the terms of their agreement, conduct, and the surrounding circumstances when determining whether a partnership exists." Holmes v. Lerner, 74 Cal. App. 4th 442, 454 (1999).

First, the Court finds that plaintiffs' allegations are insufficient to establish that an oral or implied partnership existed between the parties. Plaintiffs' allegations that "an oral and/or implied partnership existed," that "parties . . . agree[d], expressly and impliedly, that they were working together to carry on as co-owners of a business,"[1] and

[1] This allegation closely tracks the language of Cal. Corp. Code § 16202(a), which states in relevant part: "the association of two or more persons to carry on as co-owners a

that the parties "agreed and understood that they had a joint interest in undertaking the selection of a facility" are conclusory statements that the Court need not consider. See Smartco Int'l Asia Ltd. v. Gross et al., 2020 U.S. Dist. LEXIS 165329, at *4 (C.D. Cal. June 29, 2020) (finding allegation that party "understood and agreed" that entity would be a subsidiary of plaintiff and beneficially owned by plaintiff was a legal conclusion of an enforceable agreement); Yagman v. Wunderlich, 2021 U.S. Dist. LEXIS 233307, at *4 (C.D. Cal. Nov. 22, 2021) (finding conspiracy insufficiently pled based on conclusory allegations that all defendants understood and agreed that they would act in combination and overt acts were undertaken), aff'd, 2022 U.S. App. LEXIS 19807, (9th Cir. July 18, 2022). Once those conclusory statements are set aside, all that remains are plaintiffs' allegations that defendants "shared a vision for a joint business venture . . . and looked forward to supporting Oegg's growth"; that Chen expressed interest in Oegg's proposal for "a joint line" between the two parties; and that the parties exchanged emails "regarding potential sites for a factory as well as planning for the soft-boiled egg line." FAC ¶ 57-59 . These allegations, without more, fail to establish that a partnership was formed. At best, they reveal the parties' contemplation about a *potential* partnership, given that there is no allegation that Chen or anyone else at CVR ever accepted Oegg's proposal for a joint line. Indeed, "[b]usiness negotiation does not create a fiduciary relationship." Rennick v. O.P.T.I.O.N. Care, 77 F.3d 309, 317 (9th Cir. 1996) (applying California law).

Second, the Court finds that plaintiffs' allegations are insufficient to establish that the parties otherwise acted as a partnership. The Court agrees with defendants that the mere allegation that defendants attended the trade show in plaintiffs' apparel, manned Oegg's booth, and strategized together with plaintiffs "how best to market Oegg's business model and products" does not establish that the parties acted as a partnership, especially given that there is no allegation that Oegg itself is the joint business or that the parties had decided to pursue a joint line of products together through Oegg.

Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiffs' claim for breach of fiduciary duty without prejudice and with leave to amend. Because the Court dismisses the claim on the basis that plaintiffs insufficiently allege the existence of

business for profit forms a partnership, whether or not the persons intend to form a partnership."

a fiduciary relationship, the Court does not reach defendants' alternative arguments that the claim is barred by the statute of frauds or that it is preempted by CUTSA.

### B. Aiding and Abetting Breach of Fiduciary Duty

Because plaintiffs have failed to plausibly allege the existence of a partnership that would give rise to fiduciary duties, they necessarily fail to allege an underlying breach of fiduciary duty. Absent an underlying breach, plaintiffs cannot maintain a claim for aiding and abetting breach of fiduciary duty.

Accordingly, the Court **GRANTS** defendants' motion to dismiss as to plaintiffs' claim for aiding and abetting breach of fiduciary duty, without prejudice and with leave to amend.

### C. Unfair Competition Law

Defendants argue that plaintiffs' UCL claim is also "improper" because it: (1) fails to plausibly plead misconduct beyond conclusory allegations; (2) does not establish that monetary damages are inadequate; and (3) is preempted by the CUTSA to the extent it relies on Plaintiffs' deficient breach of fiduciary duty claim. Mot. at 12-13.

Plaintiffs counter that they adequately plead unlawful conduct because they sufficiently plead a predicate violation: breach of fiduciary duty. Opp. at 11-12. Moreover, plaintiffs argue that they are entitled to restitution and injunctive relief under the UCL regardless of the fact that plaintiffs seek monetary damages through other claims and that their UCL claim is not preempted by CUTSA because they are not based on the same nucleus of fact as their trade secret claims. Id.

California's unfair competition law defines "unfair competition" in part as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." Dunkel v. eBay Inc., 2013 U.S. Dist. LEXIS 13866, 2013 WL 415584, at *10 (N.D. Cal. Jan. 31, 2013) (quoting and citing Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009)).

In the FAC, plaintiffs assert that "[d]efendants committed acts of unfair competition as defined by the UCL by engaging in the unlawful, unfair, and fraudulent acts and practices" without stating which prongs are at issue or what facts would establish any of those prongs. See FAC ¶¶ 136-145.

The Court gathers from the FAC that plaintiffs seek to invoke the unlawful prong because they allege under this cause of action that defendants violated “laws including but not limited to breaches of fiduciary duty.” Id. ¶ 139. But it also appears from plaintiffs’ Opposition that plaintiffs invoke *only* the unlawful prong because it is what they exclusively rely on to argue that plaintiffs sufficiently alleged unfair competition. See Opp. at 11-13. Moreover, for that unlawful prong, plaintiffs only identify breach of fiduciary duty as the predicate violation.

Because plaintiffs have failed to plausibly allege a fiduciary relationship, that predicate cannot support the unlawful prong. Even if plaintiffs had plausibly alleged a partnership, “a common law violation such as breach of contract is insufficient” to state a claim for the “unlawful” prong of Section 17200. Shroyer v. New Cingular Wireless Servs., 622 F.3d 1035, 1044 (9th Cir. 2010).

Accordingly, the Court **GRANTS** defendants’ motion to dismiss plaintiffs’ UCL claim without prejudice and with leave to amend. See Qureshi v. Countrywide Home Loans, Inc., No. C 09-4198 SBA, 2010 U.S. Dist. LEXIS 21843, at *21 (N.D. Cal. Mar. 9, 2010) (dismissing a plaintiff’s UCL claim where the “amended complaint fails to identify which prongs of the UCL form the basis of this claim and fails to allege any particular facts in support thereof”).

### D. Fraud: Intentional Misrepresentation and False Promise

Here, plaintiffs allege two claims for fraud based on intentional misrepresentation and false promise. Defendant moves to dismiss both claims for lack of particularity pursuant to Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 9(b) requires that “allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.” Bly-Magee v. Cal., 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted).

#### 1. Misrepresentation

To plead a claim for intentional misrepresentation, plaintiffs must allege: (i) misrepresentation (false representation, concealment, or nondisclosure); (ii) knowledge of falsity (or scienter); (iii) intent to defraud; (iv) justifiable reliance; and (v) resulting

damages. Jetpack Enterprises LLC v. Jetlev LLC, 2017 WL 10560614, at *6 (C.D. Cal. 2017).

Defendants argue that the FAC relies on the following purported misrepresentations: (i) Chen’s alleged representation and manner of “conduct[ing] himself” in January 2024 as though “neither he nor CVR possessed an existing, commercially viable peeled soft-boiled egg product or any development of such product”; (ii) Chen’s presentation of himself as “merely a sales-side intermediary” assisting CVR in January 2024; (iii) other defendants’ “manifest[ations] through various means” that the concept of a soft-boiled egg product was novel and that they were not working on their own product; and (iv) unidentified “misleading statements” made by Chen and Montenegro at the 2024 Summer Fancy Food Show. Mot. at 15 (citing FAC ¶ 149).

However, defendants maintain that none of those allegations are sufficiently alleged in terms of “*what* was said, *who* said it, *when* and *where* it was said, and *why* the statement was false.” Id. (emphasis in original). Defendants also emphasize that plaintiffs do not allege that Chen “ever outright denied” that defendants were developing their own product. Id. at 16.

Plaintiffs counter that the FAC adequately alleges “the who, what, when, where and how of the misconduct,” and that their allegations “more than satisfy” Rule 9(b). Opp. at 13-17. With respect to intentional misrepresentation, plaintiffs identify Chen’s requests for product samples and his representations concerning the absence of an existing U.S. production facility; Chen’s, Nichols’, and Montenegro’s conduct during the Changsha factory tour, including allegedly “acting fascinated” by Oegg’s production processes despite knowing of CVR’s prior development efforts; and Chen’s and Montenegro’s participation at Oegg’s booth during the Summer Fancy Food Show, which allegedly misled Oegg into believing that the parties were collaborating to launch a U.S. product line. Id. at 14-16. Plaintiffs contend that defendants “failed to disclose that they had attempted to manufacture their own soft-boiled egg product line in order to gain access to Oegg’s trade secrets.” Id. at 16.

The Court finds that plaintiffs have not pleaded their intentional misrepresentation claim with sufficient particularity. The FAC alleges that defendants concealed their prior attempts to develop a competing soft-boiled egg product and conducted themselves in a manner suggesting that the concept was novel to them. FAC ¶¶ 148-150. However, the

FAC does not sufficiently identify an affirmative false representation concerning defendants' prior development efforts. For example, plaintiffs allege that Chen presented himself as a sales-side intermediary and acted as though defendants lacked an existing commercially viable product. FAC ¶ 149(a). But, even assuming that is true, that defendants represented they lacked an existing commercially viable product is not necessarily inconsistent with defendants' previous, unsuccessful development efforts—as even the FAC acknowledges. Neither do plaintiffs identify particular statements by Chen expressly denying those efforts. Similarly, allegations that defendants appeared fascinated by Oegg's production methods or assisted Oegg at a trade show do not, without additional facts, identify particular false representations of existing fact. Although plaintiffs identify several meetings and the individuals who attended them, the FAC does not adequately specify the actionable misrepresentations allegedly made during those interactions. See Vess, 317 F.3d at 1106.

To the extent plaintiffs' claim rests on concealment or nondisclosure, the FAC also fails to identify a sufficient basis for imposing a duty to disclose defendants' prior product-development efforts. Under California law, nondisclosure generally becomes actionable when a duty to disclose exists, including where a party makes partial representations that are misleading without disclosure of additional facts. See LiMandri v. Judkins, 52 Cal. App. 4th 326, 336-37 (1997). Here, plaintiffs have not plausibly alleged an existing partnership or other fiduciary relationship giving rise to a duty to disclose, and plaintiffs' allegations do not establish an actionable fraudulent concealment.

Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiffs' claim for fraud based on intentional misrepresentation without prejudice and with leave to amend.

2. False Promise

Plaintiffs' false promise claim rests on defendants' alleged false promise to "work[] with Oegg to launch a soft-boiled egg product line." FAC ¶ 157.

To support this allegation, plaintiffs emphasize the following circumstances: Chen informed Xiang that defendants Nichols and Montenegro wanted to visit Oegg's facility "in furtherance" of the partnership; defendants subsequently attended the factory tour; and Nichols' subsequently conveyed to plaintiffs that defendants "shared a vision for a

joint business venture in the United States and looked forward to supporting Oegg's growth in that market." Opp. at 16-17 (citing FAC ¶¶ 45, 48-54, 56).

Defendants counter that "a stated desire to visit, attendance at a tour, and the conveyance of a 'shared vision' are not promises to work 'with Oegg to launch [sic] soft-boiled egg product line.'" Reply at 15-16. The Court agrees with defendants.

To state a claim for promissory fraud, plaintiffs must allege a promise made without the intention to perform it. Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). Here, Chen's statement concerning the proposed factory visit, which subsequently occurred, and Nichols' expression of a "shared vision" for a joint venture do not sufficiently identify a promise to undertake future performance. Nor does the FAC adequately allege facts supporting an inference that defendants made such a promise without intending to perform it.

Accordingly, the Court **GRANTS** defendants' motion to dismiss the Seventh Cause of Action for false promise without prejudice and with leave to amend.

### E. Breach of Duty to Negotiate in Good Faith

Defendants argue that plaintiffs' claim should be dismissed because the FAC's factual allegations do not demonstrate that an "enforceable contract to negotiate" or a "binding agreement to agree" existed. Mot. at 19-20. Specifically, defendants argue that engaging in a negotiation does not "give rise to an enforceable obligation to negotiate." Id. Rather, defendants contend the "test is whether the parties are contractually compelled to continue negotiating, which is not the case here." Id.

Plaintiffs counter that they sufficiently alleged a claim for breach of duty to negotiate in good faith because they "pled the existence of a partnership and an agreement to negotiate further partnership terms." Opp. at 19 (citing FAC ¶¶ 56, 59, 67-69, 71, 73, 163-164). Plaintiffs specifically point to the FAC's allegations that the parties "expressly agreed . . . to continue to negotiate those contract terms toward a more detailed agreement" and later "reaffirmed their mutual intent to continue operating in partnership with one another and discussed ways to formalize their relationship in written agreements, agreeing to negotiate those terms in good faith." Id. at 19-20 (citing FAC ¶¶ 56, 59, 67).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-02725-CAS-DTBx | Date | October 19, 2026 |
| Title | OEGG, Inc. et al v. Pierce Egg Co. et al | | |

In reply, defendants argue that plaintiffs' argument for why this claim survives depends solely on the FAC's conclusory allegations that the parties "expressly agreed" to continue negotiating and "agree[d] to negotiate those terms in good faith." Reply at 19 (citing Opp. at 20 (citing FAC ¶ 56).

As a preliminary matter, the Court notes that under California law, contract to negotiate is "distinct" from an "agreement to agree": the former is an enforceable contract, while the latter is not. See IP Sols., Inc. v. Cent. Sierra Holdings, Inc., No. 1:21-cv-01391 JLT SKO, 2023 LX 132003, at *6 (E.D. Cal. May 3, 2023) ("Under California law, a contract to negotiate—distinct from an 'agreement to agree'—may be an enforceable contract."); see also Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 213 (2006) ("[A]n 'agreement to agree' . . . is unenforceable under California law").

There is no obligation to deal fairly or in good faith absent an existing contract to negotiate. Racine & Laramie, Ltd. v. Department of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (1992) ("[T]he commencement of negotiation activities looking to the final achievement of a contractual agreement imposes no obligation of good faith or fair dealing unless there is an underlying agreement of some sort"); see also Copeland, 96 Cal. App. 4th at 1260 (duty of good faith attaches only when parties are under a "contractual compulsion to negotiate"). "[U]nder California law, an agreement to negotiate in good faith is independently enforceable," regardless of the enforceability of the underlying joint venture agreement. Vizio, Inc. v. LeEco V. LTD., 2018 WL 5303078, at *27 (C.D. Cal. July 27, 2018).

Here, plaintiffs' sole allegation supporting this claim is that the parties "agree[d] to negotiate" the terms of their contemplated joint venture in "good faith." FAC ¶ 67. This is conclusory, and plaintiffs fail to state a claim. To state a claim, plaintiffs must allege facts to show that an independent contract to negotiate was formed between the parties.

Accordingly, the Court **GRANTS** defendants' motion to dismiss for plaintiffs' claim for breach of duty to negotiate in good faith without prejudice and with leave to amend.

### F. Promissory Estoppel

To maintain a promissory estoppel claim, plaintiffs must allege: (i) a clear and unambiguous promise; (ii) defendants breached their promise; (iii) plaintiffs actually

relied on the promise; (iv) plaintiffs’ reliance on the promise was reasonable and foreseeable; (v) plaintiffs were damaged due to their reliance; and (vi) injustice can only be avoided by enforcing the promise. Lange v. TIG Ins. Co., 68 Cal. App. 4th 1179, 1185 (1998).

Here, defendants argue that plaintiffs’ claim fails because they do not allege: (i) an enforceable promise; (ii) reasonable reliance on a promise; or (iii) the necessary nexus between their alleged damages and the breach of the purported promise. Mot. at 20. Defendants argue that their alleged promise to “jointly launch a soft-boiled egg product line in the United States” is too indefinite to be enforceable because there is no allegation that the parties agreed on “a single identifiable term.” Id.; Reply at 20-21. Defendants further contend that plaintiffs could not reasonably rely on preliminary discussions concerning an unfinalized business arrangement and that plaintiffs have not adequately connected their alleged financial losses to the purported promise.

Plaintiffs counter that the FAC adequately alleges a clear promise to work together to manufacture and sell a soft-boiled egg product line in the United States. Opp. at 20-22. Plaintiffs contend that the promise is sufficiently definite notwithstanding the parties’ failure to finalize matters such as equity percentages or profit sharing. Id. Plaintiffs further argue that they reasonably and foreseeably relied on defendants’ promise by adjusting their plans to enter the U.S. market independently, thereby delaying their market entry and suffering financial harm. Id.

To carry a claim for promissory estoppel, a promise must be “clear and unambiguous.” Lange, 68 Cal. App. 4th at 1185. A promise “cannot be established from preliminary discussions and negotiations.” Clarke v. Yu, 119 Cal. App. 5th 199, 210 (2026) (internal quotations omitted). The promise must be “definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages.” Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218, 226 (2011) (cleaned up).

Here, the FAC alleges that defendants “clearly and unambiguously promised to work with Oegg as partners to jointly launch a soft-boiled egg product line in the United States.” FAC ¶ 168. However, as discussed above (and as pled), material aspects of the contemplated venture had not been agreed upon. Id. ¶ 68. Because plaintiffs rely only on allegations about preliminary discussions or negotiations to establish a promise, the Court

concludes that plaintiffs fail to plausibly allege a clear and unambiguous promise. See Aceves, 192 Cal. App. 4th at 225-26.

Accordingly, the Court **GRANTS** defendants’ motion to dismiss for plaintiffs’ promissory estoppel claim without prejudice and with leave to amend.

### G. Defendant David Will

Defendants argue that “[a]ll claims against Defendant David Will should be dismissed because the FAC is devoid of plausible allegations that he engaged in wrongdoing.” Mot. at 21. Defendants argue that plaintiffs rely solely on allegations that Will served as CVR’s General Manager and Vice President of Sales, that he has had a relationship with Chen, that he has met Xiang at a January 2024 trade show, and that he was “aware of and involved in CVR’s efforts to develop and commercialize the Jammy Egg product.” Id. Defendants contend that the FAC contains “not a single allegation” that Will personally possessed Oegg’s trade secrets, participated in developing or promoting Jammy Egg, “personally misrepresented anything,” or “personally made promises to Plaintiffs.” Id. at 22. Defendants further argue that Will’s alleged involvement is “simply the byproduct of his employment at CVR” and that plaintiffs’ collective allegations constitute “a paradigmatic example of group pleading that Rule 8 prohibits.” Id.; Reply at 21.

Plaintiffs counter that defendants improperly disregard “both the FAC’s allegations and the governing pleading standard under Rule 8.” Opp. at 22. Plaintiffs contend that the FAC “need only contain sufficient factual matter to state a plausible claim for relief and provide Defendant Will with fair notice of the claims asserted and the grounds upon which they rest” and “is not required to plead every evidentiary fact.” Id. Plaintiffs emphasize that the FAC alleges Will “met Mr. Xiang on January 22, 2024, at Winter Fancy Food Show in Las Vegas,” “is the General Manager of CVR,” and “acted as an agent of CVR.” Id. (citing FAC ¶¶ 13, 34, 38-39, 88). Plaintiffs further assert that the FAC “alleges in detail how the Defendants, including Mr. Will, improperly acquired and used Oegg’s trade secrets and engaged in other unlawful conduct.” Id. (citing FAC ¶¶ 76-78, 84, 88). Accordingly, plaintiffs maintain that the FAC “contains sufficient factual allegations, taken as true, that show how CVR’s General Manager, Mr. Will, is liable.” Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL 'O'**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-02725-CAS-DTBx | Date | October 19, 2026 |
| Title | OEGG, Inc. et al v. Pierce Egg Co. et al | | |

"A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985) (internal quotation marks omitted). The Ninth Circuit has observed that cases that find "personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity." Davis v. Metro Prods., Inc., 885 F.2d 515, 524 n.10 (9th Cir. 1989) (internal citations omitted).

The Court finds that it would be premature to dismiss plaintiffs' claims against Will at this juncture. It appears that, during the relevant period, Will served as the General Manager and VP of Sales of CVR, and plaintiffs allege that Will attended the trade show and that he was acquainted with Xiang and Chen. Therefore, the issue of whether Will was a "guiding spirit" of CVR is best resolved by a jury.

Accordingly, the Court **DENIES** defendants' motion to dismiss all claims against defendant David Will.

### H. Withdrawn Trade Secret Allegations

Defendants move to strike the withdrawn trade secret allegations in FAC ¶¶ 25(f) and 25(j) under Federal Rule of Civil Procedure 12(f). Mot. at 22-23. These paragraphs identify "[p]ackaging and preservation techniques" and "[i]ndustry, market, commercial information, strategy, and know-how" as trade secret categories. Defendants argue that plaintiffs expressly withdrew these categories after the Court found them "not sufficiently particular" and "too vague to adequately allege a trade secret claim." Id. at 22 (citing dkt. 50 at 17-18, 20). Because the categories are no longer at issue, defendants argue that they bear no "essential or important relationship" to any live claim and should be stricken. Id. at 22-23. In their reply, defendants maintain that plaintiffs' acknowledgment that these allegations have been withdrawn confirms that they are immaterial and should not remain in the operative complaint merely to preserve "paragraph numbering." Reply at 22.

Plaintiffs respond that defendants' motion to strike is unnecessary because the FAC expressly states that these categories have been withdrawn and are not being pursued as trade secrets. Opp. at 22-23. Plaintiffs emphasize that motions to strike are

"generally regarded with disfavor" and that courts frequently require a showing of prejudice before striking allegations. Id. at 22 (quoting Pools International Ltd. v. Poolrx Worldwide, Inc., 2025 U.S. Dist. LEXIS 265671, at *2-3 (C.D. Cal. Nov. 3, 2025)). Plaintiffs explain that they retained the withdrawn categories solely to preserve consistent paragraph numbering when referencing trade secret categories throughout the litigation. FAC ¶ 25 n.2. Because the FAC makes clear that plaintiffs are not pursuing these categories, plaintiffs argue that their inclusion causes no prejudice and instead helps avoid confusion. Opp. at 23.

Because plaintiffs have indicated that they are withdrawing the trade secret allegations in FAC ¶¶ 25(f) and 25(j) and will undoubtedly be amending the Complaint, the Court assumes that they will omit withdrawn trade secrets in the amended pleading.

Accordingly, the Court need not rule on this matter.

## V. CONCLUSION

The Court **GRANTS** defendants' motion to dismiss plaintiffs' Third Cause of Action for breach of fiduciary duty and duty of loyalty, without prejudice and with leave to amend.

The Court **GRANTS** defendants' motion to dismiss plaintiffs' Fourth Cause of Action for aiding and abetting breach of fiduciary duty and duty of loyalty, without prejudice and with leave to amend.

The Court **GRANTS** defendants' motion to dismiss plaintiffs' Fifth Cause of Action for violation of California's Unfair Competition Law, without prejudice and with leave to amend.

The Court **GRANTS** defendants' motion to dismiss plaintiffs' Sixth Cause of Action for fraud - intentional misrepresentation, without prejudice and with leave to amend.

The Court **GRANTS** defendants' motion to dismiss plaintiffs' Seventh Cause of Action for fraud - false promise, without prejudice and with leave to amend.

The Court **GRANTS** defendants' motion to dismiss plaintiffs' Eighth Cause of Action for breach of the duty to negotiate in good faith, without prejudice and with leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-02725-CAS-DTBx | Date | October 19, 2026 |
| Title | OEGG, Inc. et al v. Pierce Egg Co. et al | | |

The Court **GRANTS** defendants' motion to dismiss plaintiffs' Ninth Cause of Action for promissory estoppel, without prejudice and with leave to amend.

The Court **DENIES** defendants' request to dismiss all claims against defendant David Will.

Plaintiffs shall file a second amended complaint, if any, within twenty-one (21) days of this order.

IT IS SO ORDERED.

| | | | |
|---|---|---|---|
| | 00 | : | 09 |
| Initials of Preparer | CMJ | | |